# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN A. BOEHNER,             ) | |
|                       ) | |
|        **Plaintiff,**     ) | |
|                     ) | |
|     **v.**             ) | **Civ. No. 98-0594 (TFH)** |
|                     ) | |
| JAMES A. McDERMOTT,    ) | |
|                     ) | |
|        **Defendant.**    ) | |

## MEMORANDUM OPINION

Pending before the Court are Congressman John A. Boehner's Revised Motion for Attorneys' Fees, Costs, and Interest (# 95) and Congressman Boehner's Supplemental Motion for Attorneys' Fees, Costs, and Interest (# 103).  While the parties agree Congressman Boehner is entitled to attorneys' fees, costs, and interest pursuant to 18 U.S.C. §§ 2511(1)(c), 2520(a) & (b)(3), and this Court's previous opinions and orders, they disagree as to the amount to which Congressman Boehner is entitled.

In total, Congressman Boehner requests an award of $1,115,895.53, before interest ("Total Amount"), which includes: (1) $850,887.53 for litigation of the federal claim[1] through June 30, 2007 ("Revised Amount"); (2) $14,153 for work as amicus curiae in *Bartnicki v. Vopper*, 532 U.S. 514 (2001) ("Amicus Amount"); and (3) $250,855 for work from July 1, 2007, through November 30, 2007, which included briefing an opposition to Congressman

---

[1]  Along with claiming a violation of the federal wiretapping statute, Congressman Boehner alleged a violation of the Florida wiretapping statute.  Congressman Boehner, however, lost on that count and, thus, seeks fees attributable to the federal count only.  Congressman McDermott agrees the $850,887.53 does not include work on the state claim.

McDermott's certiorari petition and litigating the fee issues before this Court ("Supplemental Amount").  Additionally, Congressman Boehner asserts he is entitled to postjudgment interest on the fee amount from October 22, 2004, the date on which this Court held that he was entitled to fees and costs.

For the reasons that follow, the Court will award Congressman Boehner the entire Revised Amount and Amicus Amount, postjudgment interest from the Court's October 22, 2004, order, and 75% of the Supplemental Amount.

## BACKGROUND

On August 20, 2004, this Court granted Congressman Boehner summary judgment on his claim that Congressman McDermott's disclosure to reporters of a recorded conversation involving Congressman Boehner and various other Republican Party leaders violated the federal wiretapping statute, 18 U.S.C. § 2511(1)(c).  *See Boehner v. McDermott*, 332 F. Supp. 2d 149, 169 (D.D.C. 2004).  Approximately one month later, on October 22, 2004, this Court found Congressman McDermott liable for $10,000 in statutory damages and $50,000 in punitive damages and ordered that Congressman Boehner shall also recover reasonable attorneys' fees and costs.[2]  Pursuant to the parties' joint motion, the Court ordered the fees issue held in abeyance pending the outcome of the appeal.  On May 1, 2007, the D.C. Circuit, sitting en banc, affirmed, albeit on different grounds, this Court's holding that Congressman McDermott violated 18 U.S.C. § 2511(1)(c).  *See Boehner v. McDermott*, 484 F.3d 573 (D.C. Cir. 2007).  The Supreme Court subsequently denied Congressman McDermott's petition for certiorari.  *McDermott v.*

---

[2]  Under the wiretapping act, a person whose communication is unlawfully intercepted may recover "a reasonable attorney's fee and other litigation costs reasonably incurred."  18 U.S.C. § 2520(b)(3).

*Boehner*, 128 S. Ct. 712 (2007).

## DISCUSSION

Insofar as this opinion is concerned, the parties disagree on following issues: (1) whether Congressman Boehner is entitled to the entirety of the Revised Amount in light of Congressman Boehner's lack of success on his argument that the First Amendment does not protect the disclosure of truthful information of public concern by a person who knew or had reason to know that the information was unlawfully obtained by another; (2) whether Congressman Boehner is entitled to attorneys' fees attributable to his participation as amicus curiae in *Bartnicki v. Vopper*, 532 U.S. 514 (2001); (3) whether the Supplemental Amount is reasonable in light of the tasks performed, i.e., preparing an opposition to a certiorari petition and litigating the fee issues; and (4) whether postjudgment interest should begin to accrue from the Court's October 22, 2004, order concluding that Congressman Boehner is entitled to attorneys' fees or from the date this Court quantifies a fee award.

## I.   REVISED AMOUNT

While not challenging the reasonableness of the amount of hours expended or the rate requested, Congressman McDermott contends that, because Congressman Boehner failed to prevail on his "core" argument that the First Amendment did not shield Congressman McDermott from liability because he knew or had reason to know that the recording was unlawfully intercepted, Congressman Boehner's success was partial or limited at best and, thus, the Revised Amount is unreasonable. Def. Opp'n 8; Def. Reply 7 ("Simply put, the scope of this litigation would have been narrower, and the amount of fees and costs would have been lower, but for Rep. Boehner's refusal to concede that the First Amendment—and *Bartnicki v.*

3

*Vopper*—protect the disclosure of truthful information of public concern by a person who played no role in intercepting the underlying information, even if he knew or had reason to know that it was unlawfully obtained by another.").  Countering, Congressman Boehner contends that the fees he incurred on the federal claim were "concededly reasonable" and, because he fully prevailed on that claim, no reduction is even potentially warranted.

In support of his argument, Congressman McDermott chiefly relies on the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), in which the Court held that, "where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley*, 461 U.S. at 440. The Court in *Hensley*, however, did not directly address the situation presented here.  Indeed, there the Court was required to determine the "proper standard for setting a fee award where the plaintiff has achieved only limited success," i.e., "where the plaintiff did not succeed on all claims asserted." *Hensley*, 461 U.S. at 431-32.  *See also id.* at 426 ("The issue in this case is whether a partially prevailing plaintiff may recover an attorney's fee for legal services on unsuccessful claims."); *George Hyman Const. Co. v. Brooks*, 963 F.2d 1532, 1536 (D.C. Cir. 1992) ("In *Hensley v. Eckerhart*, the Supreme Court defined the conditions under which a plaintiff who prevails on only some of his claims may recover attorney fees . . . .").

Here, Congressman Boehner succeeded on the only claim for which he seeks fees—his claim that Congressman McDermott violated the federal wiretapping statute by disclosing to reporters the tape recording of an illegally intercepted conversation in which Congressman Boehner participated—and, thus, the Court finds that a reduction under the partial success analysis of *Hensley* is unwarranted.  *See American Petroleum Inst. v. EPA*, 72 F.3d 907, 911-12

(D.C. Cir. 1996) (holding that because plaintiffs pursued only one claim for relief, i.e., the invalidity of a regulation, "there are not 'separate claims' but only separate arguments in support of the same claim, [and, thus,] *Hensley v. Eckerhart* has no applicability").[3]

That Congressman Boehner pursued only one claim for relief raises the somewhat more fundamental issue of whether Congressman Boehner's argument that Congressman McDermott did not lawfully obtain the recording can be seen as a claim or issue raised by Congressman Boehner such that his failure to prevail on the argument is a proper basis to reduce the fees in this matter. Indeed, the "unlawfully obtained" argument arose as a response to Congressman McDermott's affirmative defense that the First Amendment protected his disclosure from liability. And Congressman McDermott cites no case in which a court found reduction of a fee award proper based solely on a prevailing party failing to succeed on a response to an affirmative defense. Rather, in all of the cases Congressman McDermott cites in his opening brief for his argument that Congressman Boehner's fee award should be reduced by some unspecified amount, the plaintiffs were only partially successful, in that they prevailed on only some of their actual legal claims. *See Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 757 (7th Cir. 2002) (holding reduction proper where plaintiff prevailed on retaliation claim but failed on discrimination and reinstatement claims); *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 771-72 (8th Cir. 2000)

---

[3] In his reply, Congressman McDermott contends that *American Petroleum Institute* is inapposite because the case does not address "the rule announced in *Hensley* that is at issue in this case—namely, that '[a] reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.'" Def. Reply 7. *American Petroleum Institute*, however, contained no such limitation. And, in any event, the relief Congressman Boehner obtained is not limited in comparison to the scope of this litigation. Congressman Boehner raised one claim for relief for which he now requests fees, and he succeeded on that claim.

5

(holding reduction proper where plaintiff prevailed on only one of six claims); *Jason D.W. by Mr. & Mrs. Douglas W. v. Houston Indep. Sch. Dist.*, 158 F.3d 205, 210 (5th Cir. 1998) (holding reduction proper where plaintiff failed to achieve the "primary objective" of IDEA case "to secure placement at another school"); *Raton Gas Transmission Co. v. FERC*, 891 F.2d 323, 330-31 (D.C. Cir. 1989) (holding that reduction proper under *Hensley* because, although petitioner prevailed on challenge to specific fee, plaintiff failed to prevail on blanket challenge to any filing fee)[4]; *Rendon v. AT&T Techs.*, 883 F.2d 388, 399 (5th Cir. 1989) (holding reduction proper where, although plaintiffs prevailed on some claims, plaintiffs "fail[ed] to prove discrimination in hiring and termination practices"); *Thomas ex rel. A.T. v. Dist. of Columbia*, No. 03-1791, 2007 WL 891367, at *5 (D.D.C. Mar. 22, 2007) ("Plaintiff ultimately succeeded on only two of ten claims [raised] in her Complaint."); *Martini v. Fed. Nat'l Mortgage Ass'n*, 977 F. Supp. 482, 484, 489-91 (D.D.C. 1997) (reducing fees where plaintiff prevailed on Title VII claims but lost on common law tort claims); *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*, 347 F. Supp. 2d 1310, 1326 (N.D. Ga. 2004) ("Plaintiffs have prevailed on some, but not all of their claims."); *Carroll v. Blinken*, 899 F. Supp. 1214, 1216 (S.D.N.Y. 1995) (reducing fees where plaintiffs were prevailing parties "only on [a] separate and obviously minor issue" and "not on the major and important issue which sparked this litigation"); *Ryan v. Raytheon Data*

---

[4] During argument on the fee issue, Congressman McDermott pointed to *Raton Gas* as a case in which the D.C. Circuit reduced a fee award based on the prevailing party's failure to prevail on a response to an affirmative defense. While the court in *Raton Gas* reduced the petitioner's attorneys' fees for its failure to succeed on two of its four responses to the respondent's timeliness objections to the petitioner's two claims, the result of the court rejecting the two responses was that one of the petitioner's claims—that FERC could not impose any filing fee when a pipeline lowers its price—failed. 891 F.2d at 330-31. Thus, in *Raton Gas*, unlike here, the prevailing party did not succeed on all of its claims for relief.

*Sys. Co.*, 601 F. Supp. 243, 252, 255-56 (D. Mass. 1984) (reducing fees where plaintiff prevailed

on discriminatory termination but lost on benefits discrimination claim).

Even the case Congressman McDermott cites in his response brief for the proposition that

the Court must engage in an issue-by-issue assessment of Congressman Boehner's success and

discount the fee request based on his failure to succeed on his unlawfully obtained argument

supports a distinction based on issues or claims raised by the prevailing party.  *See* Def. Reply 5-

6 (citing *Kennecott Corp. v. EPA*, 804 F.2d 763 (D.C. Cir. 1986)).  In *Kennecott*, various

operators of nonferrous smelters petitioned for review of EPA regulations on the ground that the

regulations violated a certain statute.  In their petition, the operators advanced three basic

arguments: (1) the EPA's procedural actions in promulgating the regulations at issue were

improper; (2) the EPA's regulations concerning a financial test were inconsistent with the statute;

and (3) the EPA did not have statutory authority to require a particular treatment for certain

sulfur dioxide streams.  Because in an earlier appeal the D.C. Circuit held in petitioners' favor on

the first two arguments but rejected the third, the court concluded that the petitioners' fee award

must be reduced for their failure to succeed on the sulfur dioxide streams issue.  *Kennecott*, 804

F.2d at 765.  Thus, in *Kennecott*, as in all of the cases Congressman McDermott cites, the fee

award was reduced because the requesting party failed to succeed on an issue—a claim—on

which it sought relief.

Here, as stated, Congressman Boehner, unlike the plaintiffs in the cited cases and the

petitioners in *Kennecott*, succeeded on his only claim for relief for which he requests a fee award.

In his complaint, Congressman Boehner alleged that Congressman McDermott violated the

federal wiretapping statute, 18 U.S.C. § 2511(1)(c), and sought relief in the form of statutory and

punitive damages and attorneys' fees.  After holding that Congressman McDermott violated the

statute and that the First Amendment did not shield him from liability, this Court awarded

Congressman Boehner $10,000 in statutory damages, $50,000 in punitive damages, and

reasonable attorneys' fees.  Because the en banc court did not ultimately adopt Congressman

Boehner's primary response to Congressman McDermott's affirmative defense does not render

Congressman Boehner a "partially successful plaintiff."[5]

Even assuming that Congressman Boehner's response to Congressman McDermott's First

Amendment defense was a claim raised by Congressman Boehner, the Court, in its discretion,

will not reduce Congressman Boehner's fees related to that argument.  Although a majority of the

en banc court—that is, the five judges joining Part I of Judge Sentelle's dissent—rejected the

unlawfully obtained argument, 484 F.3d at 583-84, a separate majority of the en banc court

accepted Congressman Boehner's alternative argument and, thus, held that Congressman

McDermott received no First Amendment protection because he held a sensitive position with

---

[5] Congressman McDermott attempts to cast Congressman Boehner as a partially prevailing plaintiff because the Court awarded Congressman Boehner only half the amount of punitive damages he sought.  *See* Def. Reply 4 (citing *Farrar v. Hobby*, 506 U.S. 103, 115 (1992), for the proposition that a court "should reduce a fee award even when the movant was the prevailing party, and even when he received every *type* of relief requested, if the fees nonetheless are unreasonable compared to the *extent* of his success").  Although the Court in *Farrar* noted that, "[i]n some circumstances, even a plaintiff who formally 'prevails' [on a civil rights claim] should receive no attorney's fees at all" or low fees, it limited its holding to a situation where a civil rights plaintiff seeking damages is awarded only nominal damages.  506 U.S. at 115.  It did so because, "[i]n a civil rights suit for damages, [although a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his 'absolute' right to procedural due process] . . . the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury," which is "an essential element of his claim for monetary relief."  *Id.*  Here, unlike in *Farrar*, Congressman Boehner proved all the essential elements of his claim, which entitled him to statutory and punitive damages and attorneys' fees and costs.  That the Court did not award Congressman Boehner greater punitive damages is of no moment in this Court's analysis of the reasonableness of his requested fees.

"special duties of non-disclosure," 484 F.3d at 579.[6]  In this situation, a reduction of fees is not

warranted: "Litigants in good faith may raise alternative legal grounds for a desired outcome, and

the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a

fee.  The result is what matters."  *Hensley*, 461 U.S. at 435.  *See also Kennecott*, 804 F.2d at 766

("Petitioners were completely successful on their challenge to the financial ability test, and the

court's rejection of their alternative (State power) challenge to the same test provides no grounds

for reducing the fee."); *American Petroleum Institute*, 72 F.3d at 911-12 (holding that, although

petitioners did not succeed on all five of their defensible arguments, because they "pursued only

one claim for relief" and the court accepted the soundness of at least three of the arguments, no

reduction is proper).

 To rebut this alternative argument contention, Congressman McDermott relies on *Gratz*

*v. Bollinger*, 353 F. Supp. 2d 929 (E.D. Mich. 2005), in which the court reduced the requested

fee amount because, the court found, the plaintiffs "failed to prevail" on their "'first and

foremost' argument."  353 F. Supp. 2d at 938 (citation omitted).  That case, however, does not

support Congressman McDermott's argument.  In *Gratz*, the plaintiffs claimed that the

University of Michigan's admission policies violated the Constitution and civil rights laws by

considering race as an admissions factor.  The plaintiffs advanced two constitutional theories: (1)

---

 [6]  Although Congressman McDermott suggests that Congressman Boehner's "sensitive position" argument was last minute and subsidiary to his lawfully obtained argument, *see* Def. Opp'n 3 & Def. Reply 7, Congressman Boehner placed the argument first in his brief to the D.C. Circuit following the Supreme Court's remand, devoting nine pages out of twenty eight to the argument, *see* Supp. Br. For Appellant at 6-15, *Boehner v. McDermott*, No. 98-7156 (D.C. Cir Aug. 30, 2001) (arguing that Supreme Court precedent establishes that "public officials in sensitive positions, such as Representative McDermott, may be prohibited from disclosing information without raising serious First Amendment concerns").

any use of racial preference in undergraduate admissions is unconstitutional; and (2) the University's particular use of race was not narrowly tailored and, thus, unconstitutional.  While the plaintiffs prevailed on their second theory, the court held that the plaintiffs achieved only "limited success" because the plaintiffs' "main goal in [the] litigation" was to prevail on their second theory and, thus, "invalidate the consideration of an applicant's race in college admissions."  *Gratz*, 353 F. Supp. 2d at 938.  Consequently, although the court framed the plaintiffs' requests for relief as "arguments," the plaintiffs actually advanced two distinct claims for relief, only one of which succeeded.  The reduction in fees, therefore, was appropriate.

Here, unlike the plaintiffs in *Gratz*, Congressman Boehner succeeded on his sole claim for relief, and, therefore, *Gratz* provides no support for Congressman McDermott's fee reduction argument.  Indeed, Congressman Boehner sought and received a ruling that Congressman McDermott's disclosure violated the federal wiretapping statute, and he requested and received statutory and punitive damages for the violation and an award of attorneys' fees.  *See* Amend. Compl. 9; Docket ## 82 & 83 (October 22, 2004, Memorandum Opinion and Order).

In sum, even if Congressman Boehner's unlawfully obtained argument was a claim or issue subject to the *Hensley* partial success analysis, the Court holds that no reduction in fees is appropriate because Congressman Boehner was a fully prevailing party, in that he won substantial relief in context of the litigation as a whole.   That Congressman Boehner defeated Congressman McDermott's affirmative defense on one of the two grounds Congressman Boehner offered does not affect the degree of Congressman Boehner's success.  *See Kennecott*, 804 F.2d at 766.  And Congressman McDermott's summary argument that Congressman Boehner's fees should be reduced because, "[s]imply put, the scope of the litigation would have

10

been narrower, and the amount of fees and costs would have been lower, but for Rep. Boehner's

refusal to concede that the First Amendment—and *Bartnicki v. Vopper*—protect the disclosure of

truthful information of public concern by a person who played no role in intercepting the

underlying information," provides no basis for a different result. *Hensley*, 461 U.S. at 435

("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the

court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.

The result is what matters.").

## II.    AMICUS AMOUNT

Congressman McDermott claims Congressman Boehner is not entitled to recover the

$14,153 in fees[7] he incurred while participating as amicus curiae in *Bartnicki v. Vopper* because,

in light of the Supreme Court's rejection of Congressman Boehner's amicus position,

Congressman Boehner's amicus work did not lead to his ultimate success in this litigation.  Def.

Opp'n 12.[8]  Countering, Congressman Boehner contends he is entitled to attorneys' fees incurred

in connection with his amicus work because he incurred those fees in pursuit of his victory in this

matter.  Pl. Mem. 13.

---

[7]  The parties agree this amount reflects the amount of fees related to Boehner's amicus
work in *Bartnicki*.  Def. Opp'n 12 n.2.

[8]  In his initial brief, Congressman McDermott also suggested Congressman Boehner
cannot recover fees for his amicus work because the text of 18 U.S.C. § 2520(b) does not
expressly permit recovering fees for work in a separate lawsuit.  Def. Opp'n 12.  Congressman
McDermott did not press this argument in his reply.  Nor did he raise it during oral argument.
And, in any event, the D.C. Circuit has recognized that, even absent specific statutory language,
fees may be awarded for time spent preparing an amicus brief in a separate case upon a "clear
showing that the time was expended in pursuit of a successful resolution of the case in which
fees are being claimed."  *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319,
1334-35 (D.C. Cir. 1982).

The D.C. Circuit has only once addressed whether a party may recover attorneys' fees for time expended in preparing an amicus brief in a related case. *See Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319 (D.C. Cir. 1982). Although in *Concerned Veterans* the court ultimately remanded for the district court to reconsider the reasonableness of the time the prevailing party spent on preparing the amicus brief,[9] it noted that "[c]ompensable time should not be limited to hours expended within the four corners of the litigation." *Id*. at 1335 (citing *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 767 (7th Cir. 1982)). Instead, the court held, a party may recover such fees upon a "clear showing that the time was expended in pursuit of a successful resolution of the case in which fees are being claimed." *Id*.

Here, Congressman Boehner contends he is entitled to fees incurred relating to his amicus work in *Bartnicki* because the fees were reasonably incurred in pursuit of his victory in this case. Congressman McDermott does not dispute that Congressman Boehner incurred the fees *in pursuit* of his victory here or that the fees are otherwise reasonable; rather, Congressman McDermott argues Congressman Boehner cannot recover fees for his amicus work because he cannot show that his amicus brief *contributed* to his ultimate victory. Def. Reply 8 ("[I]t is not enough for Rep. Boehner to say that submitting a brief in the *Bartnicki* lawsuit *could have* contributed to his success in this case. Instead, Rep. Boehner must demonstrate that his amicus brief actually contributed to his ultimate success . . . ."). Congressman McDermott relies on *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760 (7th Cir. 1982), and *Coleman v. Block*, 589 F. Supp.

---

[9] The court did so based on its holding that the record was insufficiently developed as to the actual hours spent on various aspects of the litigation, in that the documentation of hours expended was summary, no time charges backed up the documentation, and appellees had no systematic methods for recording time and may not even have been able to provide meaningful records when requested. *Concerned Veterans*, 675 F.2d at 1334-35.

1411 (D.N.D. 1984), for the proposition that courts permit prevailing parties to recover fees for

work in separate matters primarily when such work led directly or was crucial to their ultimate

victory,[10] which, because the Supreme Court rejected Boehner's amicus position, Boehner cannot

---

[10] In *Chrapliwy*, the Seventh Circuit reversed the district court's disallowance of fees for services related to Title VII plaintiffs' efforts to have the federal government debar the defendant from its federal contracts. *Id*. at 765. In reversing the district court, the circuit noted that the plaintiffs' efforts, although not put forth in the actual Title VII litigation, were designed to bring an efficient end to the Title VII litigation and proved successful: "The perseverance of the plaintiffs in their efforts to persuade the government to debar the defendant from its federal contracts led directly to the settlement of the Title VII action." *Id*. at 766. Similarly, in *Coleman v. Block*, 589 F. Supp. 1411 (D.N.D. 1984), the district court permitted prevailing parties to recover attorneys' fees for their work as amicus in a case before the Eighth Circuit because, the district court found, the circuit case was "crucial" to the plaintiffs' success on their § 1981a claim in the district court. There, the resolution of the circuit case required the defendant to implement a procedure, the absence of which was the basis for the plaintiffs' § 1981a due process claim. *Coleman*, F. Supp. at 1419.

Congressman McDermott also cites *Knop v. Johnson*, 700 F. Supp. 1457 (W.D. Mich. 1988), for his proposition that Congressman Boehner must show that his amicus brief actually contributed to his ultimate success. Def. Opp'n 13-14; Def. Reply 8. That case, however, does not stand for such a proposition. In *Knop*, the district court held that the plaintiffs were not entitled to attorneys' fees for their work as "litigating amicus" in another action because the claims upon which they prevailed were unrelated to the claims they pursued in their role as amicus curiae. Similarly, Congressman McDermott incorrectly cites *Kemp v. Williams*, 1981 WL 208 (D.D.C. May 27, 1981), claiming that there "the Court disallowed time relating to the preparation of an *amicus* brief, reasoning that such time is not compensable when it 'does not advance the merits of the litigation.'" Def. Opp'n 13. Although in *Kemp* Judge Gasch did disallow fees for an amicus brief, he did not reason that fees for amicus work are available only when the work directly advances the merits of the subject litigation. Rather, without discussion or citation, he held that amicus work is never compensable: "Time spent seeking publicity or an amicus brief is not properly billed to one's adversary because it does not directly advance the merits of the litigation." *Kemp*, 1981 WL 208, at *1. As noted, the D.C. Circuit rejected that position one year later, *see Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1334-35 (D.C. Cir. 1982) (holding that fees may be awarded for time spent preparing an amicus brief in a separate case upon a "clear showing that the time was expended in pursuit of a successful resolution of the case in which fees are being claimed"). Finally, Congressman McDermott relies on *Marbled Murrelet v. Pacific Lumber Co.*, 163 F.R.D. 308 (N.D. Cal. 1995), to support his argument. In that case, the court disallowed fees for time spent trying to decide whether to file an amicus brief in a case before the Supreme Court because that case was "not directly related to the victory that [plaintiff] achieved in the district court." *Id*. at 323. Far from holding that the fees were improper because the discussions did not lead directly to the prevailing

show here.  *See* Def. Reply ("Because Rep. Boehner's unsuccessful efforts in *Bartnicki* plainly did not lead to his victory in this case, fees associated with the amicus briefing should be excluded.").

Countering, Congressman Boehner argues that the inquiry is not whether the amicus work directly led to his success but, rather, whether a reasonable and prudent lawyer would have filed the brief to advance his client's interest.  Pl. Mem. 14.  In support of his argument, and in addition to his reliance on the D.C. Circuit's "in pursuit of" language in *Concerned Veterans*, Boehner features *Arizona v. Maricopa County Med. Soc'y*, 578 F. Supp. 1262, 1268 (D. Ariz. 1984).  In that case, Arizona sought fees for time spent on an amici brief in the Supreme Court. Rejecting the defendants' argument that no time should be allowed for the amici brief, the court stated:

> The basic question is: Would the preparation of the amici curiae brief . . . "have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest" in this case?  Stated more simply, is it reasonable to conclude that a client would have authorized [the requested sum] in fees in a true attorney-client relationship?

578 F. Supp. at 1268 (citing *Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982)).  Answering its questions in the affirmative, the court found that Arizona was undoubtedly interested in the Supreme Court case, as the Court's decision "might

---

party's victory, the court disallowed the fees because the Supreme Court's resolution could only "arguably . . . have an impact on this case as it proceeds through the appellate process."  *Id*. Here, unlike in *Marbled Murrelet*, the Supreme Court's resolution of *Bartnicki* undoubtedly had an impact on this case before this Court.  Indeed, the Supreme Court remanded this matter for further consideration in light of *Bartnicki*.  *McDermott v. Boehner*, 532 U.S. 1050 (2001).

affect" the antitrust laws at issue in Arizona's action.  *Id.*[11]

Here, there is no question that the time spent on the *Bartnicki* amicus brief was "expended in pursuit of a successful resolution of the case in which fees are being claimed," *Concerned Veterans*, 675 F.2d at 1335, and would "have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest 'in this case,'" *Maricopa County*, 578 F. Supp. at 1268.[12]  If the Supreme Court had held in the plaintiffs' favor in *Bartnicki*—the main position Congressman Boehner's amicus brief advanced—the decision would have eliminated Congressman McDermott's First Amendment defense.[13]  Moreover, the Supreme Court granted certiorari in order to resolve the conflict between the Third Circuit's First Amendment decision in *Bartnicki* and the D.C. Circuit's First Amendment decision in this case, *Bartnicki*, 532 U.S. at 522, and held this case pending its decision in *Bartnicki*.

Additionally, although Congressman Boehner's amicus brief did not lead directly to his ultimate success before the D.C. Circuit, it served the purpose, as many such briefs do, of urging the Court to issue a narrow decision, one which would not disturb its holding in *Aguilar*.  In his amicus brief, Congressman Boehner argued that, even if the First Amendment protected the

---

[11]  In the end, the court did not award Arizona the entire amount of requested fees because it "fail[ed] to find a 'clear showing' . . . sufficient to justify the total time claimed for filing the *amici curiae* brief."  *Maricopa County*, 578 F. Supp. at 1269.  Here, Congressman McDermott does not challenge as unreasonable the amount of time spent on the *Bartnicki* amicus brief and the Court finds such time reasonable.  *See* Documentation in Support of Revised Motion for Attorneys' Fees at Tab 10.

[12]  Notably, Congressman McDermott also filed an amicus brief in the matter.  *See* Br. of Amicus Curiae Representative James A. McDermott in Support of Respondents, *Bartnicki v. Vopper*, 532 U.S. 514 (2001) (Nos. 99-1687 & 99-1728), 2000 WL 1597815.

[13]  The defendants in *Bartnicki*, like Congressman McDermott, knew or had reason to know that the conversations they disclosed were unlawfully intercepted.

*Bartnicki* defendants, the statute could still constitutionally apply to Congressman McDermott because, unlike the private parties in *Bartnicki*, Congressman McDermott, "just like the federal judge in *Aguilar*, is a 'government official' in '[a] sensitive confidential position' [who] took an 'oath' to preserve the 'confidentiality' of any information so obtained."  Br. of Amicus Curiae Representative John A. Boehner in Support of Petitioners at 28, *Bartnicki v. Vopper*, 532 U.S. 514 (2001) (Nos. 99-1687 & 99-1728), 2000 WL 1280467.  Interestingly, this is the argument the en banc majority ultimately adopted.  *Boehner*, 484 F.3d at 579-81 ("When Representative McDermott became a member of the Ethics Committee, he voluntarily accepted a duty of confidentiality that covered his receipt and handling of the Martins' illegal recording. He therefore had no First Amendment right to disclose the tape to the media.").

In sum, because Congressman Boehner expended time on the amicus brief in pursuit of a successful resolution in this matter and a reasonably prudent attorney would have done the same, and because no binding precedent, much less any case this Court could uncover, requires that a prevailing party show amicus work led directly to his ultimate victory in the subject case, the Court will award Congressman Boehner the $14,153 in fees he incurred while participating as amicus curiae in *Bartnicki v. Vopper*.  *Cf. Hasbrouck v. Texaco, Inc.*, 879 F.2d 632 (9th Cir. 1989) (holding, in antitrust context, award of attorneys' fees for amicus work in a related case was reasonable even though amicus position did not succeed because a reasonable and prudent lawyer would have undertaken such work to advance or protect his client's interest).

### III.     POST-JUDGMENT INTEREST

Congressman Boehner contends the Court should award him postjudgment interest commencing on October 22, 2004, the date this Court ordered that he was entitled to attorneys' fees.[14]  In doing so, he urges this Court to adopt the view that interest begins to run from the date a court rules that a party is entitled to attorneys' fees rather than from the date the court quantifies the amount of the award.  Congressman McDermott, in response, urges this Court to adopt the view that, based on the plain language of 28 U.S.C. § 1961(a), accrual of postjudgment interest does not begin until the entry of a judgment quantifying the amount of fees to which a party is entitled.  For the reasons stated below, the Court will award Congressman Boehner postjudgment interest on his fee award from October 22, 2004.

Postjudgment interest for an attorneys' fees award is governed by 28 U.S.C. § 1961(a).  *See Eaves v. County of Cape May*, 239 F.3d 527, 530 (3d Cir. 2001); *Assoc. Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 485 (6th Cir. 2001).  In relevant part, § 1961(a) provides, "Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment."  28 U.S.C. § 1961(a).

Although the D.C. Circuit has yet to weigh in on the issue, the Third and Tenth Circuits hold that interest does not begin to accrue under § 1961(a) until the district court enters an order quantifying the amount of fees ("minority view"),[15] *see, e.g.*, *Eaves v. County of Cape May*, 239

---

[14]  Congressman Boehner seeks interest on the fees and costs incurred prior to October 22, 2004, only.  Pl. Mem. 16 n.5.

[15]  In his memorandum, Congressman Boehner asserts that the Seventh Circuit also follows the minority view.  Pl. Mem. 16.  This, however, is not wholly accurate.  Although, as

F.3d 527, 542 (3d Cir. 2001) ("[W]e hold that pursuant to 28 U.S.C. § 1961(a), post-judgment

interest on an attorney's fee award runs from the date that the District Court enters a judgment

quantifying the amount of fees owed to the prevailing party rather than the date that the Court

finds that the party is entitled to recover fees, if those determinations are made separately.");

*MidAmerica Fed. Savings & Loan Ass'n v. Shearson/American Exp., Inc.*, 962 F.2d 1470, 1475-

77 (10th Cir. 1992) (same), while the Fifth, Sixth, Eighth, Ninth, Eleventh, and Federal Circuits

hold that interest begins to run on the date the court rules that a party is entitled to attorneys' fees

("majority view"), *see, e.g., Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482, 495 (6th Cir.

2001) (holding that "the language of § 1961(a) permits the interest to run on a fee award from the

time of entry of the judgment which unconditionally entitles the prevailing party to reasonable

attorney fees"); *Friend v. Kolodzieczak*, 72 F.3d 1386, 1391-92 (9th Cir. 1995) (holding that

interest is calculated from the date of judgment unconditionally entitling the prevailing party to

attorney fees); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 332 (5th Cir. 1995) (same)

(reaffirming the rule originally set forth in *Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d

542 (5th Cir. 1983) (en banc)); *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d

1045, 1052-53 (11th Cir. 1994) (same); *Jenkins v. Missouri*, 931 F.2d 1273, 1277 (8th Cir. 1991)

---

Congressman McDermott quotes in his memorandum, in *Fleming v. County of Kane*, 898 F.2d 553, 565 (7th Cir. 1990), the court stated that, "[p]rior to the date the judgment on attorney's fees was entered, plaintiff's attorneys' claim for unpaid attorney's fees was unliquidated and, as such, not entitled to interest," the court was not faced with, as the Court is here, determining whether interest begins to run from the judgment entitling the prevailing party to fees or the judgment quantifying those fees. Rather, the court addressed whether the district court erred in adjusting for the attorneys' delay in receiving fees by using historical billing rates but adding interest at the prime rate "from a date 30 days after the end of the month in which the services were rendered" through the date on which the judgment was entered on the jury's liability verdict. *Fleming*, 898 F.2d at 565. And, in any event, the court in *Fleming* did not address § 1961(a).

(same); *and Mathis v. Spears*, 857 F.2d 749, 760 (Fed. Cir. 1988) (same).  Additionally, two

district courts in circuits that have not directly addressed the issue follow the majority view.  *See,*

*e.g., Bogan v. City of Boston*, 432 F. Supp. 2d 222, 235 (D. Mass. 2006) ("This district has

adopted the majority rule that post judgment interest begins to accrue when the plaintiffs are

entitled to the award, not necessarily when the award is quantified."); *Albany v. City & Town of*

*Bristol*, 96 F. Supp. 2d 121, 124 (D. Conn. 2000).[16]

In support of his position that the Court should adopt the minority view, Congressman

McDermott attempts to rely on the plain language of the statute.  He first asserts, and

Congressman Boehner does not dispute, that the term "judgment" in the accrual portion of §

1961(a) refers to the term "money judgment" in the first sentence of the statute.  Def. Opp'n. 15.

From there, McDermott contends that a money judgment "traditionally has been understood to

constitute a 'judgment . . . requir[ing] a party to pay a fixed sum'—and there is no basis for

applying a different meaning here."  Def. Reply 10 (citing *Eaves*, 239 F.3d at 533-34).  While the

Third Circuit in *Eaves* did hold that a "money judgment" commonly must comprise "a definite

and certain designation of the amount which plaintiff is owed by defendant," it based its

interpretation on its prior interpretation of the phrase "enforcement of a money judgment" found

within a former section of the Bankruptcy Code.  239 F.3d at 533 (citing *Penn Terra Ltd. v.*

*Department of Envtl. Res.*, 733 F.2d 267, 275 (3d Cir.1984)).  In *Penn Terra*, the court was

required to determine whether an action was an "attempt to enforce a money judgment," and, in

---

[16]  While no judge of this court appears to have squarely addressed the issue, Judge
Sporkin, without discussion, awarded postjudgment interest on attorneys' fees computed from
the date of the merits judgment, which was seven months before the date of the order quantifying
the fees.  *Jefferson v. Milvets Sys. Tech., Inc.*, 986 F. Supp. 6, 12-13 (D.D.C. 1997).

doing so, noted that the provision "should be construed narrowly so as to leave to the States as much of their police power as a fair reading of the statute allows." *Penn Terra*, 733 F.2d at 272. There is no such narrowing requirement in this context, and, thus, the Third Circuit's reliance on *Penn Terra* appears misplaced.[17]  And, in any event, the majority of the courts that have addressed the definition of the term "money judgment" in § 1961(a) have held that "a judgment that unconditionally entitles a party to reasonable attorney fees is the 'money judgment' contemplated by § 1961." *Drabik*, 250 F.3d at 490 (collecting cases).

Along with arguing that the plain language requires that a fixed sum is necessary to trigger accrual under § 1961, Congressman McDermott contends that the "Supreme Court itself has applied the exact same rule to the accrual of post-judgment interest on an award of damages." Def. Opp'n 16 (citing *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990), for the Court's holding that postjudgment interest does not begin to run when "the damages have not been 'ascertained' in any meaningful way").  This, however, is not so.  In *Bonjorno*, after the district court entered a directed verdict for the defendant and the Third Circuit reversed and remanded for a new trial, the district court entered judgment on a jury verdict on August 22, 1979.  The district court, thereafter, vacated the judgment and ordered a new trial on damages, finding the jury's verdict unsupported by the evidence.  A third jury, on December 2, 1981, again returned a plaintiff's verdict.  The district

_____

[17]  In addition to relying on *Penn Terra* for its interpretation of "money judgment," the Third Circuit also looked to a number of other cases, a majority of which arose in the bankruptcy context and none of which applied the term "money judgment" in the fee context or to a situation analogous to that presented here, i.e., where there was a judgment unconditionally entitling a party to damages and a second judgment that quantified the damages.  *See Eaves*, 239 F.3d at 533-34.

court entered judgment on the jury's verdict on December 4, 1981, but subsequently granted the defendant's motion for judgment notwithstanding the verdict. On appeal, the Third Circuit reversed and reinstated the December 4, 1981, judgment. The district court then held that § 1961 required interest on damages be calculated from December 2, 1981, the date of the jury's verdict, a holding which the Third Circuit affirmed.

On certiorari, the Supreme Court considered two issues relevant to the present discussion: (1) whether interest on damages should be calculated from the date of verdict, December 2, 1981, or the date of the judgment, December 4, 1981; and (2) whether interest on damages should be calculated from the date of the December 1981 judgment or the August 1979 judgment that was subsequently vacated. As to the first issue, the Court looked to § 1961(a)'s plain language—"interest shall be calculated from the date of the entry of the *judgment*"—and the absence of any contrary legislative history and, accordingly, held that interest did not begin to accrue until the date of judgment, as a verdict is nowhere mentioned in the statute and is nowise a "judgment." *Id*. at 835. In deciding the second issue, the Court employed the following analysis: the "purpose of postjudgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment of the defendant," *id*. at 835-36; because the August 1979 judgment was vacated as not supported by the evidence, the damages were not "ascertained in any meaningful way" as of that date, *id*.; and, therefore, interest began to run from the December 1981 judgment, not the legally insufficient August 1979 judgment, *id*. at 836. Thus, rather than standing for the proposition Congressman McDermott offers—i.e., "the Court determined that interest should not begin to run until the entry of judgment quantifying a damage award," Def. Reply 10—the Court

21

stated that damages must be ascertained in some meaningful way in the context of holding that

postjudgment interest cannot begin to run from a judgment that was subsequently vacated.

Here, unlike in *Bonjorno*, the October 22, 2004, order is a valid, final judgment that

unconditionally awards Congressman Boehner reasonable attorneys' fees and is fully supported

by the evidence.  Therefore, the award, albeit unquantified, was ascertained on that date for

purposes of triggering accrual.  *Cf. Bonjorno*, 494 U.S. at 836 ("Where the judgment on damages

was not supported by the evidence, the damages have not been 'ascertained' in any meaningful

way."); Nick J. Kemphaus & Richard A. Bales, *Interest Accrual on Attorney's Fee Awards*, 23

Rev. Litig. 115, 130 (2004) ("The Supreme Court [in *Bonjorno*] specifically defined the phrase

'ascertainment of the damage' as a judgment supported by the evidence or judgment on the

merits, leaving no doubt that it did not mean an exact quantum judgment." (footnote omitted)).

And "[t]here exists no reason, in either the language or history of § 1961, nor in binding

precedent, that prevents this Court from holding that interest accrues" on Congressman

Boehner's fee award from the date of this Court's merits judgment.  *See Drabik*, 250 F.3d at

492.[18]

Moreover, equitable concerns favor holding that attorneys' fees accrue interest from the

date of the judgment unconditionally awarding fees to the prevailing party.  For example,

---

[18] Congressman Boehner also urges the Court to distinguish *Bonjorno* based on a distinction between damages and attorneys' fees.  Pl. Mem. 19-20.  No basis exists, however, for such a distinction.  Section 1961 itself draws no distinction.  And the policy distinction that Congressman Boehner offers is without merit.  As this case makes clear, the same uncertainties exist between the two types of awards: A prevailing party's fee estimate provides the losing party no certainty, especially where, as here, fee issues are in dispute.  Likewise, a defendant awaiting lengthy proceedings to quantify damages is in the same position as a defendant, like Congressman McDermott, awaiting fee quantification.

awarding such interest more fully compensates the prevailing party due to the time-value of money, and "[t]he fee-paying party suffers no prejudice from any delay in quantifying the award because it has the use of the money in the interim and because the statutory interest rate is tied to the U.S. Treasury Bill rate." *Jenkins*, 931 F.2d at 1276-77. *See also Drabik*, 250 F.3d at 495 ("[T]he losing party will suffer no actual prejudice or unfair burden by the accrual of interest from the date of entitlement, since that party has the use of the money until payment."). Additionally, "[i]f interest does not accrue from the time a party becomes entitled to such fees, the losing party has every reason to delay quantification of fees." *Drabik*, 250 F.3d at 494. Such a rule would "provide[] the losing party with incentive to repeatedly request extensions, or seek a stay on the issue of attorney fees pending the merits of appeal." *Id*. at 494-95.[19] "The prevailing party (or perhaps her attorney) will then be out of pocket for what is potentially a long period of time while awaiting quantification." *Id*. at 495.

In sum, because this Court's October 22, 2004, order constitutes a valid judgment that unconditionally entitled Congressman Boehner to an award of attorneys' fees, § 1961(a) mandates the running of interest from the date of judgment, and neither the plain language of § 1961 nor binding precedent requires a different result, the Court will follow the majority view and, accordingly, holds that interest began to accrue on the fee award on October 22, 2004.

---

[19] Here, the Court ordered the fee issue held in abeyance pending the outcome of any appeal, *see* Docket # 83 (Order of October 22, 2004) and, subsequently, the parties jointly requested the Court do so, *see* Docket # 86.

## IV.    SUPPLEMENTAL AMOUNT

Congressman Boehner requests approximately $250,000 in supplemental attorneys' fees and costs for work performed from July 1, 2007, through November 30, 2007.  The Supplemental Amount breaks down approximately as follows: (1) $75,000 for preparing, documenting, and communicating about the fee petition; (2) $80,000 for researching, briefing, and hearing preparation relating to the fee issues; and (3) $95,000 for opposing Congressman McDermott's certiorari petition.  Congressman McDermott contends the Court must reduce the Supplemental Amount because approximately $250,000 is excessive in light of the scope of the work involved.

### A.    Fee Petition & Litigation

While not challenging the hourly rates charged, Congressman McDermott argues that Congressman Boehner's $155,000 fee request for preparing the fee petition and litigating the fee issues—so called "fees on fees"—is unreasonable, in that the amount is excessive relative to the limited scope of the tasks performed.  In support of his position, Congressman McDermott cites to numerous cases in which courts found unreasonable requests for fees on fees that were far less than Congressman Boehner's,[20] and points out that the fee petition is only three pages and did not

---

[20] Examples of such cases include *American Petroleum Inst. v. EPA*, 72 F.3d 907, 918 (D.C. Cir. 1996) (awarding $37,185 where fee petition reflected substantial research on novel issues); *Environmental Defense Fund, Inc. v. Reilly*, 1 F.3d 1254, 1259 (D.C. Cir. 1983) (concluding that research and writing of "boilerplate" fee petition should have required at most 8 hours); *Thomas ex rel. A.T. v. District of Columbia*, 2007 WL 891367 (D.D.C. March 22, 2007) (reducing fees for fee petition by 50% because fee litigation is not "complex federal litigation" and some of fee request included administrative and procedural tasks); *Heard v. District of Columbia*, 2006 WL 2568013, at *20 (D.D.C. Sept. 5, 2006) (finding requested amount of $108,829.70 for fee petition patently unreasonable and reducing fees to $56,500); *Heller v. District of Columbia Dep't of Housing and Community Development*, 1987 WL 15928 (D.D.C. Aug. 14, 1987) (reducing compensable time to prepare fee petition from 42.5 hours to 28.3 hours despite well-organized nature of petition and that it contained procedural history, summary of findings and conclusions, and descriptions of the billing records that supported the request).

include supporting affidavits or other documentation, Congressman Boehner submitted a single

22-page brief that did not entail preparation of a supporting affidavit or other documentation

during the five-month period covered by the supplemental fee request, the parties did not engage

in fee-related discovery, and the three issues the parties dispute are neither far reaching nor

complex.  In response, Congressman Boehner contends his fees on fees request is reasonable

because he exercised proper billing judgment and voluntarily reduced a substantial portion of the

fees, and, overall, Congressman McDermott "vastly understates"the work that went into the

petition and the response to Congressman McDermott's objections.

"It is 'settled in this circuit' that '[h]ours reasonably devoted to a request for fees are

compensable.'"  *Heard v. District of Columbia*, 2006 WL 2568013, at *19 (D.D.C. Sept. 5,

2006) (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 528 (D.C.

Cir.1985)).  "However, 'fees on fees' must be reasonable, and not excessive." *Id*.  Courts,

therefore, "have an 'obligation to scrutinize the hours spent preparing the fee petitions to insure

that the total is reasonable and that it does not represent a windfall for the attorneys.'" *Id*.

(quoting *Farris v. Cox*, 508 F.Supp. 222, 226 (N.D. Cal.1981)).  As with any fee request, the

party requesting fees on fees has the burden of establishing the reasonableness of the request and

must submit supporting documentation that "provid[es] sufficient detail so that the Court can

determine '*with a high degree of certainty*' that the hours billed were actually reasonably

expended . . . and that the matter was appropriately staffed to do the work required efficiently and

without duplicative billing." *Watkins v. Vance*, 328 F. Supp. 2d 23, 26 (D.D.C. 2004) (citation

omitted).

Congressman Boehner has not met his burden.  Indeed, Congressman Boehner submitted

no documentation with his request for fees on fees.  Rather, after Congressman McDermott

opposed his request—and almost one month after filing his request—Congressman Boehner

submitted only summaries of the amount of fees claimed.  *See* Documentation in Support of

Revised Mot. for Attorneys' Fees and Costs.  While helpful to the Court in providing an overall

picture of Congressman Boehner's claims for fees and costs, the summaries do not, with the

requisite amount of detail—or much less any detail—provide the Court with a way to discern on

what tasks the hours were expended.  *See, e.g.*, Revised Mot. Doc. at Tab 6 (noting for each

month from July 2007 to November 2007 the total amount billed, any reductions, and the amount

claimed, without explaining the tasks performed).  Such summaries are insufficient to establish

the reasonableness of Congressman Boehner's request for fees on fees.  *See In re Sealed Case*,

890 f.2d 451, 455 (D.C. Cir. 1989) (per curiam) ("[W]e note numerous instances of

documentation and specification that do not adequately describe the legal work for which the

client is being billed.  This makes it impossible for the court to verify the reasonableness of the

billings, either as to the necessity of the particular service or the amount of time expended on a

given legal task.").

From the papers submitted during this fee litigation, the Court's only way to attempt to

determine the amount of hours expended on tasks related to the request for fees on fees is an

exhibit to Congressman Boehner's response to Congressman McDermott's opposition to the

supplemental request.  That exhibit comprises redacted copies of the monthly bills for July 2007

through November 2007, as they were transmitted to Congressman McDermott.  *See* Pl. Mem.

Support Suppl. Mot., Ex. A.  Even if the Court considers these copies of bills sent to

Congressman McDermott as the necessary documentation supporting Congressman Boehner's

supplemental fee request, they are insufficient for the Court to determine the reasonableness of the hours expended. For example, many, if not most, of the entries combine multiple tasks. *See, e.g., id.* at 6 (entry indicating that, on July 11, 2007, a Jones Day associate spent 3.5 hours on the following tasks: "Conference with L. Fisher regarding attorney fee issues; review pleadings; conduct research regarding attorney fee issues"); *id.* at 8 (entry indicating that, on August 3, 2007, a Jones Day associate spent 8.1 hours on the following tasks: "Legal Research regarding attorneys' fee issues for motion and proceedings on attorneys' fees; review/analyze time records and draft of letter to opposing counsel regarding same on fee petition; communications with L. Fisher, T. Lipscomb regarding attorneys' fee petition and letter to opposing counsel regarding same; drafting of memorandum on availability of 'fees on fees' for proceedings on attorneys' fees"). Such "lump[ing] together [of] multiple tasks[] mak[es] it impossible to evaluate their reasonableness." *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004) (citing *In re Olson*, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (per curiam) ("[W]hen an attorney bill[s] for more than one task in a day, the court is left to approximate the amount of time which should be allocated to each task. With such inadequate descriptions the court cannot determine with a high degree of certainty, as it must, that the billings are reasonable." (footnote and internal quotation marks omitted))").

In sum, the Court is left with insufficient information from which it can determine with the necessary "high degree of certainty" that the fees on fees request is reasonable. Due to Congressman Boehner's inadequate documentation and failure to justify the amount of fees on fees sought—even in the face of Congressman McDermott's specific challenge to the reasonableness of the hours expended in this portion of the litigation—the Court will exercise its

discretion and reduce the requested amount by 25%. *See Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); *Role Models*, 353 F.3d at 973 (reducing requested fee amount by 50% due to "inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries"); *Michigan v. EPA*, 254 F.3d 1087, 1094-95 (D.C. Cir. 2001) (eliminating completely billing entries that were "wholly inadequate" and reducing remaining request by 10% due to inadequately detailed descriptions). The Court finds that this percentage reduction recognizes the basic failings of Congressman Boehner to meet his burden of establishing the reasonableness of the amount sought and, at the same time, awards Congressman Boehner a reasonable amount for the work done during the fee litigation phase of this matter.[21]

### B.        Certiorari Opposition

Congressman Boehner's request for fees in connection with his opposition to Congressman McDermott's petition for certiorari is subject to the same deficiencies as his request for fees related to the fee litigation. That is, other than copies of the bills he submitted to Congressman McDermott and the summaries of amounts claimed, Congressman Boehner has failed to submit any documentation that "provid[es] sufficient detail so that the Court can determine '*with a high degree of certainty*' that the hours billed were actually reasonably expended . . . and that the matter was appropriately staffed to do the work required efficiently and without duplicative billing." *Watkins*, 328 F. Supp. 2d at 26. Thus, as with Congressman Boehner's request for fees on fees, the Court will exercise its discretion and reduce the requested

---

[21] The Court also finds that this amount reflects a reasonable award in comparison to the cases cited *supra*, at note 20.

amount by 25%.  The Court finds that this percentage reduction not only recognizes

Congressman Boehner's failure to meet his burden but also reflects a reasonable award of fees

for Congressman Boehner's opposition to the certiorari petition.

### CONCLUSION

Based on the foregoing, the Court will grant Congressman Boehner's Revised Motion for

Attorneys' Fees, Costs, and Interest and grant in part and deny in part his Supplemental Motion

for Attorneys' Fees, Costs, and Interest.


March 31, 2008                                              _____/s/_____
                                                                  Thomas F. Hogan
                                                                  Chief Judge